UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN DOE,

                          Plaintiff,

      - against -

WELLS FARGO BANK, N.A.,

                          Defendant.
------------------------------------------------------------------------X


**<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO PROCEED UNDER A PSEUDONYM</u>**

JOSEPH & NORINSBERG, LLC
By: Jitesh Dudani, Esq.
Julie Varghese, Esq.
*Attorneys for Plaintiff*
One World Trade Center, Floor 85
New York, New York 10007
Tel: (212) 227-5700
Fax: (212) 656-1889
Jitesh@employeejustice.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT.......................................................................................................................4

    I.  THE LEGAL STANDARD GOVERNING MOTIONS TO PROCEED UNDER A
    PSEUDONYM.........................................................................................................4

    II.  THE SEALED PLAINTIFF FACTORS OVERWHELMINGLY FAVOR ANONYMITY
    .................................................................................................................................6

        A.  This Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature 6

        B.  Identification Would Directly Incur and Compound the Very Injury Litigated Against
        .............................................................................................................................7

        C.  The Public Interest Favors Protecting Whistleblower Identity and Preventing a
        Chilling Effect on Future Reporting ..................................................................9

        D.  Defendant Is Fully Aware of Plaintiff's Identity and Would Suffer No Prejudice......11

        E.  No Adequate Alternative Mechanism Exists to Protect Plaintiff's Identity.................12

CONCLUSION...................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Bechtel v. Admin. Review Bd.,* 710 F.3d 443 (2d Cir. 2013) ........................................................10

*Doe v. Colgate Univ.,* 2016 U.S. Dist. LEXIS 48787 (N.D.N.Y. Apr. 12, 2016) ................. passim

*Doe v. Cruz,* 2024 U.S. Dist. LEXIS 62387 (S.D.N.Y. Apr. 4, 2024) ..........................................11

*Doe v. Indyke,* 2019 U.S. Dist. LEXIS 157124 (S.D.N.Y. Sept. 11, 2019).................................13

*Doe v. Nygard,* 2020 U.S. Dist. LEXIS 151186 (S.D.N.Y. Aug. 20, 2020).................................12

*Doe v. Weinstein,* 484 F. Supp. 3d 90 (S.D.N.Y. 2020) .................................................................5

*Montague v. Poly Prep Country Day Sch.,* 2025 U.S. Dist. LEXIS 69071 (E.D.N.Y. Apr. 10, 2025) ...............................................................................................................................................13

*Sealed Plaintiff v. Sealed Defendant #1,* 537 F.3d 185 (2d Cir. 2008)................................. passim

*United States v. Pilcher,* 950 F.3d 39 (2d Cir. 2020).....................................................................8


**Statutes**

Sarbanes-Oxley Act, 18 U.S.C. § 1514A...................................................................................1, 10

15 U.S.C. § 78u-6 ..........................................................................................................................10


**Rules**

Fed. R. Civ. P. 10(a) ...................................................................................................................1, 14

**PRELIMINARY STATEMENT**

Plaintiff John Doe ("Plaintiff"), an adult male proceeding under a pseudonym, respectfully submits this Memorandum of Law in support of his motion, filed contemporaneously with his Complaint, for leave to prosecute this action under a pseudonym and for a protective order barring the public disclosure of his true identity. Plaintiff brings claims against his former employer, WELLS FARGO BANK, N.A. ("Defendant" or "Wells Fargo"), arising from its retaliation against him after he repeatedly objected to market manipulation, research suppression, and the concealment of material risks affecting retail investors in the municipal bond market, in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (at times, referred to as "SOX") and New York Labor Law, § 740(2)(b), (c) ("NYLL").

Plaintiff's circumstances fall squarely within the narrow pseudonym exception to Fed. R. Civ. P. 10(a). The Complaint recounts, in unavoidable detail, how Plaintiff spent eighteen months internally reporting that Wells Fargo supervisors were suppressing accurate market research so that retail investors would continue purchasing bonds from Wells Fargo's own inventory without the material risk information they needed to make informed decisions. Concealing material information from investors to protect the firm's inventory positions is the precise conduct SOX was enacted to combat, and Plaintiff is the employee who identified it, reported it, and was fired for doing so. Wells Fargo's response was to initiate a pretextual plagiarism investigation, terminate his employment, and file a permanent U4 report branding him as discharged for cause, the same report that caused UBS, JPMorgan, and RBC Capital Markets to withdraw from recruitment discussions. Every allegation, once attached to his real name, deepens the harm this lawsuit exists to undo.

Applying the non-exhaustive ten-factor framework set forth in *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2d Cir. 2008), Plaintiff's interest in anonymity decisively outweighs both the public's interest in disclosure and any prejudice to Defendant. Although *Sealed Plaintiff* identifies ten factors, Plaintiff addresses the most relevant and overlapping considerations below through five practical categories: the sensitive and personal nature of this case; the risk that disclosure would compound the very injury being litigated; the public interest in protecting whistleblowers; the absence of prejudice to Defendant; and the lack of any adequate alternative to pseudonymity. Each category supports anonymity.

The five categories weigh in Plaintiff's favor for the following reasons: **(1)** Plaintiff's claims involve matters that are highly sensitive and of an extremely personal nature, implicating Plaintiff's professional integrity, livelihood, and reputation in a licensed, reputation-dependent industry; **(2)** identification would directly compound the very injury litigated against, as UBS, JPMorgan, and RBC Capital Markets each withdrew from recruitment discussions after reviewing the U4 filing, and a public court record would permanently entrench that harm; **(3)** the public interest affirmatively favors anonymity, because the whistleblower protections of the Sarbanes-Oxley Act reflect Congress's judgment that shielding the identities of employees who report securities fraud encourages future reporting and serves the broader investing public; **(4)** Defendant is fully aware of Plaintiff's identity, having employed him, conducted an internal investigation, and participated in OSHA administrative proceedings under his real name, and therefore suffers no prejudice from a pseudonym on the public docket; and **(5)** no adequate alternative mechanism exists, because neither a protective order nor partial redaction can prevent the public association of Plaintiff's name with the whistleblower allegations in this action in a permanent, searchable court record.

For the reasons set forth below, Plaintiff respectfully requests that the Court grant this motion in its entirety.

**STATEMENT OF FACTS**

Plaintiff joined Wells Fargo Bank, N.A. as Executive Director and Head of Municipal Strategy on or about September 27, 2023. He brought more than eighteen years of fixed income experience to the role, having published over one thousand research reports without a single plagiarism allegation, and Wells Fargo recruited him specifically to strengthen its credibility in the municipal markets, positioning him as its public-facing municipal bond strategist with regular CNBC appearances and Bloomberg citations.

Over an eighteen-month period, Plaintiff repeatedly objected internally to what he reasonably believed was market manipulation: his supervisors' systematic suppression of negative credit assessments and risk indicators from his published research so that Wells Fargo could continue selling bonds from its own inventory to retail investors without disclosing material risks. Specifically, Wells Fargo suppressed material market research across multiple sectors of the municipal bond market, including analyses concerning California bond prices, Build America Bond redemption risk, Puerto Rico Electric Power Authority default history, and American Dream bond payment risk, to protect the firm's own inventory positions at the expense of retail investors.

The specific instances of suppressed research and the resulting investor harm are set forth in detail in the contemporaneously filed Complaint. Concealing material information from investors to protect the firm's inventory positions is precisely the conduct the Sarbanes-Oxley Act was enacted to combat, and Plaintiff's objections constitute protected whistleblower activity under 18 U.S.C. § 1514A.

3

Shortly after Plaintiff escalated his concerns to Wells Fargo's Chief Executive Officer's office in March 2025, Defendant initiated a plagiarism investigation and, on April 15, 2025, terminated his employment, citing a single allegedly plagiarized paragraph as the sole basis. Plaintiff contends the plagiarism rationale is pretextual and retaliatory: it was the first such allegation in his eighteen-year career, and the reports were prepared collaboratively by supervisors who held final editing rights and routinely accessed them using shared credentials.

That same day, on April 15, 2025, Defendant filed a Form U4 termination report with the Financial Industry Regulatory Authority ("FINRA") stating that Plaintiff was "Terminated due to failure to adhere to Wells Fargo standards regarding company publications," with the termination type listed as "Discharged." This report is published on Plaintiff's FINRA BrokerCheck profile and is permanently accessible to every prospective employer in the financial industry. The U4 report is the central injury Plaintiff seeks to remedy in this action.

The harm from that filing is concrete and has already materialized. UBS, JPMorgan, and RBC Capital Markets each withdrew from recruitment discussions with Plaintiff after reviewing the U4 report. Although Plaintiff has since obtained a position at First New York as a macro trader, his compensation is minimal and uncertain, and the reputational harm continues to limit his ability to work in his field. Because Defendant classified his separation as for cause, Plaintiff was also denied short- and long-term disability benefits, leaving him with more than twenty thousand dollars ($20,000) in unpaid medical expenses. Plaintiff has further suffered depression, anxiety, loss of self-esteem, and difficulty sleeping as a direct result of Defendant's conduct.

Plaintiff's identity has remained confidential with respect to the whistleblower allegations at issue in this case. Although Defendant's U4 filing is publicly available through FINRA BrokerCheck, neither the predicate OSHA administrative proceedings nor any press report or other

public record has associated Plaintiff's name with his allegations of whistleblowing, market manipulation, or retaliation. This action would therefore be the first public record linking Plaintiff's identity to those allegations. At the same time, Defendant has known of Plaintiff's identity since his hire, conducted its internal investigation under his real name, and litigated the OSHA proceedings under his real name, and it retains full knowledge of his identity for purposes of defending this action.

## **ARGUMENT**

### I. **THE LEGAL STANDARD GOVERNING MOTIONS TO PROCEED UNDER A PSEUDONYM**

When determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant. *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2d Cir. 2008). The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right in remaining anonymous. That privacy right must outweigh the customary and constitutionally embedded presumption of openness in judicial proceedings. *Id.* at 189. In limited circumstances, a district court has discretion to grant an exception to the general requirement of disclosing the actual names of parties by permitting a plaintiff to proceed under a pseudonym. *Id.* at 188–89. Plaintiffs seeking anonymity must base their allegations about these competing interests on more than mere speculation. *Doe v. Weinstein*, 484 F. Supp. 3d 90, 93 (S.D.N.Y. 2020) (quoting *Sealed Plaintiff*, 537 F.3d at 189).

In *Sealed Plaintiff*, the Second Circuit identified non-exhaustive factors to guide this inquiry, the relevant factors of which are set forth below:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party seeking to proceed anonymously or even more critically, to innocent

non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 189–90 (internal quotation marks, citations, and alterations omitted).

A district court "is not required to list each of the factors or use any particular formula" so long as it "balanced the interests at stake in reaching its conclusion." *Id.* at 191 n.4. The factors are non-exhaustive, and a court may consider other relevant circumstances. *Id.* at 190. As demonstrated below, the *Sealed Plaintiff* factors weigh overwhelmingly in favor of permitting Plaintiff to proceed as John Doe.

## II.  THE SEALED PLAINTIFF FACTORS OVERWHELMINGLY FAVOR ANONYMITY

### A.  This Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature

The first factor asks whether the litigation involves matters that are highly sensitive and of a personal nature. Although this action arises in an employment and securities context rather than one involving sexual abuse or medical history, the sensitivity of the subject matter is no less acute. At its core, this case concerns Plaintiff's professional identity, livelihood, and reputation in a specialized industry in which he has spent nearly two decades building his career. Wells Fargo's U4 filing publicly characterizes Plaintiff's termination as "Terminated due to failure to adhere to Wells Fargo standards regarding company publications," a characterization that Plaintiff contends

is false and retaliatory. That filing is not a routine employment record. It is a permanent, industry-wide publication that brands Plaintiff as having been discharged for cause, striking at his integrity and professional fitness in a licensed, reputation-dependent field. This factor weighs in favor of anonymity.

The second factor asks whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously. Plaintiff has suffered mental and emotional harm as a direct result of Defendant's conduct, including depression, anxiety, loss of self-esteem, and difficulty sleeping. These injuries are personal and sensitive, and their connection to the professional conduct at issue renders the subject matter of this case sensitive across multiple dimensions: professional, reputational, financial, and personal. Public disclosure of Plaintiff's identity would not merely describe past harm; it would actively compound it, by permanently attaching his name to the very characterization that caused that harm and ensuring that every future employer encounters it. Courts have granted anonymity in employment cases involving comparable combinations of professional stigma and personal harm. *Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787, at *9 (N.D.N.Y. Apr. 12, 2016). This factor weighs in favor of anonymity.

The fourth factor asks whether Plaintiff is particularly vulnerable to the possible harms of disclosure. Plaintiff has spent more than eighteen years building a career as a fixed income strategist, having published over one thousand research reports, and was recruited by Wells Fargo specifically to strengthen its credibility in the municipal markets. In a field where professional reputation is not merely an asset but a prerequisite to employment, and where every prospective employer conducts a FINRA BrokerCheck review before extending an offer, Plaintiff's vulnerability to the harms of public disclosure is acute and concrete. UBS, JPMorgan, and RBC

Capital Markets each withdrew from recruitment discussions after reviewing the U4 filing. The more senior and specialized the professional, the narrower the market of prospective employers and the more devastating a permanent public association with a for-cause termination becomes. Plaintiff is not a litigant who faces generalized embarrassment from public filing. He is an experienced professional in a licensed industry where the disclosure of this lawsuit would be reviewed, catalogued, and held against him by every institution he approached for the remainder of his career. This factor weighs in favor of anonymity.

## B.  Identification Would Directly Incur and Compound the Very Injury Litigated Against

The third *Sealed Plaintiff* factor weighs decisively in Plaintiff's favor. The Second Circuit instructs courts to consider "whether identification presents other harms and the likely severity of those harms, including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Sealed Plaintiff*, 537 F.3d at 190. Both prongs of this factor weigh decisively in Plaintiff's favor.

The economic harm Plaintiff has sustained is not speculative. It is concrete, verifiable, and attributable directly to Defendant's conduct. Wells Fargo filed a U4 termination report with FINRA on April 15, 2025, stating that Plaintiff was "Terminated due to failure to adhere to Wells Fargo standards regarding company publications." This report is published on Plaintiff's FINRA BrokerCheck profile and is permanently accessible to all prospective employers in the financial industry. UBS, JPMorgan, and RBC Capital Markets each withdrew from recruitment discussions after reviewing the U4 filing. Although Plaintiff has since obtained a position at First New York as a macro trader, his compensation is minimal and uncertain, and his reputational harm continues to limit his ability to work in his field. Plaintiff was also denied access to short- and long-term disability benefits because Wells Fargo falsely classified his separation as for cause, leaving him

8

with more than $20,000 in unpaid medical expenses. Courts have denied anonymity where claims of harm were unsubstantiated and speculative. *See United States v. Pilcher*, 950 F.3d 39 (2d Cir. 2020); however, no such deficiencies exist here.

The second prong of this factor weighs equally in Plaintiff's favor. The central injury in this action is the concrete, permanent damage already caused by Defendant's retaliatory U4 filing. Plaintiff brings this action precisely to contest and remedy that characterization. Requiring him to file this public lawsuit under his real name would create an additional permanent court record, amplifying the very narrative he seeks to correct and compounding the injury he is suing to remedy, rather than merely risking a new disclosure. As courts in this Circuit have recognized, "forcing Plaintiff to reveal his identity would not advance any aspect of the litigation but instead would pose a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787, at *9 (N.D.N.Y. Apr. 12, 2016). The injury is not theoretical, it has already materialized, and requiring Plaintiff to file this lawsuit under his real name would exacerbate it. As such, this factor weighs in favor of granting this motion.

## C. The Public Interest Favors Protecting Whistleblower Identity and Preventing a Chilling Effect on Future Reporting

The seventh, eighth, and ninth *Sealed Plaintiff* factors also support anonymity.

The seventh factor asks whether Plaintiff's identity has thus far been kept confidential. Although Plaintiff's Form U4 is publicly available through FINRA BrokerCheck, no prior court filing, public administrative proceeding, or press report has associated Plaintiff's name with the whistleblower allegations asserted in this action. This lawsuit would be the first public proceeding to connect Plaintiff's identity with those allegations. This factor favors anonymity.

The eighth factor asks whether the public's interest in the litigation is furthered by requiring Plaintiff to disclose his identity. Here, the public interest weighs in favor of anonymity. This action

9

involves allegations that Wells Fargo suppressed material market research across multiple sectors of the municipal bond market, including analyses concerning California bond prices, Build America Bond redemption risk, Puerto Rico Electric Power Authority default history, and American Dream bond payment risk, to protect the firm's own inventory positions at the expense of retail investors. Congress enacted the whistleblower protections of the Sarbanes-Oxley Act to recognize the public benefit served by employees who report precisely this type of conduct. *Bechtel v. Admin. Review Bd.*, 710 F.3d 443 (2d Cir. 2013). The confidentiality provisions of 15 U.S.C. § 78u-6, which restrict the SEC from disclosing information that could identify a whistleblower, reflect that same legislative judgment. Requiring Plaintiff to litigate publicly under his own name, in circumstances where doing so would compound the professional harm he has already sustained, undermines the policy underlying those protections and risks deterring future whistleblowers from coming forward in similar circumstances.

Courts have recognized that the chilling effect on potential litigants is a cognizable consideration under this analysis. Specifically, courts have noted the "potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations." *Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787, at *9–10 (N.D.N.Y. Apr. 12, 2016). Courts have specifically credited the "real possibility that plaintiff would be dissuaded from pursuing the action further and [the] inhibiting effect it could have on other potential plaintiffs." *Id.* at *9–10. These concerns apply with heightened force in the whistleblower context, where the industry-wide reach of a FINRA BrokerCheck record creates a severe and durable deterrent to reporting unlawful conduct. Plaintiff's harm is not theoretical: three major financial institutions withdrew from recruitment discussions after reviewing the U4 filing. Congress enacted § 1514A precisely to protect employees who take lawful acts to disclose fraudulent conduct or otherwise assist in

10

detecting and stopping actions which they reasonably believe to be fraudulent. Section 806 of the Sarbanes-Oxley Act seeks to combat what Congress identified as a corporate "culture, supported by law, that discourage[s] employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally." Forcing Plaintiff to litigate under his real name in a forum permanently searchable by prospective employers in a licensed, reputation-dependent industry recreates the exact chilling effect that Congress designed § 1514A to eliminate. This factor favors anonymity.

The ninth factor asks whether there is an atypically weak public interest in knowing the litigants' identities. The public interest here runs to the conduct alleged, not to the identity of the person who reported it. The suppression of material market research, the retaliatory use of the U4 system, and the broader harms to retail investors are matters of public concern entirely independent of whether Plaintiff's name appears on the docket. The disclosure of Plaintiff's identity adds nothing to the public's ability to understand or benefit from this litigation. It adds only harm to him. This factor favors anonymity.

## D. Defendant Is Fully Aware of Plaintiff's Identity and Would Suffer No Prejudice

The sixth *Sealed Plaintiff* factor, prejudice to the defendant, weighs entirely in Plaintiff's favor. The Second Circuit instructs courts to consider "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190. Defendant would suffer no cognizable prejudice from an order permitting Plaintiff to proceed under a pseudonym.

Defendant has been aware of Plaintiff's identity since the onset of his employment and throughout the OSHA administrative proceedings that preceded this action. Defendant retains full

11

ability to conduct discovery, depose witnesses, and defend this matter with complete knowledge of his identity. Courts in this Circuit have consistently held that where a defendant already knows a plaintiff's identity, there is no prejudice to permitting anonymity in public filings. *Doe v. Cruz*, 2024 U.S. Dist. LEXIS 62387, at *3 (S.D.N.Y. Apr. 4, 2024) (no "countervailing concern that allowing [the] [p]laintiff to proceed anonymously would prejudice [d]efendant" where defendant already knew plaintiff's identity); *Doe v. Nygard*, 2020 U.S. Dist. LEXIS 151186, at *7 (S.D.N.Y. Aug. 20, 2020) ("Defendants will experience little or no prejudice by allowing Plaintiffs to remain anonymous at this stage of the proceeding, as Plaintiffs have agreed to make their names and identities known to Defendants"); *Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787, at *10 (N.D.N.Y. Apr. 12, 2016) ("Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly.") This factor favors anonymity.

### E.  No Adequate Alternative Mechanism Exists to Protect Plaintiff's Identity

The tenth *Sealed Plaintiff* factor confirms that a pseudonym is necessary. The Second Circuit instructs courts to consider "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Sealed Plaintiff*, 537 F.3d at 190. No such alternative exists here.

A protective order governs the use of confidential documents and information exchanged in discovery. It provides no protection against the public disclosure of Plaintiff's name in the court docket, in filed motion papers, or in judicial opinions. The harm Plaintiff seeks to avoid is the public association of his name with the whistleblower allegations in a permanent, searchable court record. No mechanism short of proceeding by pseudonym prevents that outcome. Courts in this Circuit have consistently so held. *Montague v. Poly Prep Country Day Sch.*, 2025 U.S. Dist.

LEXIS 69071, at *25 (E.D.N.Y. Apr. 10, 2025) ("because the disclosure of Plaintiff Jonah's identity would exacerbate any preexisting harm to him, there is no alternative mechanism for protecting his identity"); *Doe v. Indyke*, 2019 U.S. Dist. LEXIS 157124, at *5 (S.D.N.Y. Sept. 11, 2019) ("[i]t is the disclosure of her identity that would exacerbate any preexisting harm to plaintiff and hence there is not [sic] alternative mechanism for protecting her confidentiality.").

The permanent and industry-wide nature of Plaintiff's FINRA BrokerCheck record means that the addition of a court filing under his real name would create a second permanent public reference to those allegations that no subsequent protective order could unseal or remove. In these circumstances, a protective order is insufficient and proceeding by pseudonym is the only mechanism to adequately protect Plaintiff's identity.

Partial redaction would also not serve as an adequate substitute because his name and identifying details run through the heart of the Complaint. The Complaint is, after all, a core judicial document subject to a strong presumption of public access. The public interest in access to the substance of the pleadings is therefore best served by leaving the filings intact and substituting a pseudonym for Plaintiff's name, rather than redacting Plaintiff's name and identifying details themselves.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an Order, pursuant to Rule 10(a) of the Federal Rules of Civil Procedure:

(i)    granting Plaintiff leave to file his Complaint, Summonses, Civil Cover Sheet, and all other papers in this action under the pseudonym "John Doe," and to prosecute this action under that pseudonym;

13

(ii)     directing that Plaintiff's true name be redacted from, or withheld from, all

documents filed on the public docket in this action;

(iii)     prohibiting Defendant from publicly disclosing or identifying Plaintiff by his true

name in any public filing in this action; and

(iv)     granting Plaintiff such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        July 8, 2026

                                                      Respectfully submitted,

                                                      JOSEPH & NORINSBERG, LLC
                                                      By: Jitesh Dudani, Esq.
                                                      Julie Varghese, Esq.
                                                      *Attorneys for Plaintiff*
                                                      One World Trade Center, Floor 85
                                                      New York, New York 10007
                                                      Tel: (212) 227-5700
                                                      Fax: (212) 656-1889
                                                      Jitesh@employeejustice.com

14